UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In the matter of:

    Asmar, Inc.,                                  Case No. 12-52639-MBM
                                                     Chapter 11
                        Debtor.   /              Hon. Marci B. McIvor

**OPINION AND ORDER DENYING DEBTOR'S
MOTION FOR RECONSIDERATION**

On July 19, 2012, this Court entered an Order Granting Fifth Third Bank's Motion for Relief from Stay. On August 2, 2012, Debtor filed a Motion for Reconsideration of this Court's Order. On August 24, 2012, Fifth Third Bank filed a Response to Debtor's Motion for Reconsideration. For the following reasons, the Court denies Debtor's Motion for Reconsideration.

<u>Statement of Facts</u>

Debtor, Asmar, Inc., owns three parcels of commercial real estate: 172 West 14 Mile Road, Clawson, Michigan; 25058 Schoenherr, Warren, Michigan; and 41591 Garfield, Clinton Township, Michigan. Debtor leases the properties to King Dining, Inc., which operates Burger King franchises at each of the properties. Raad Asmar is the sole principal of both Asmar, Inc. and King Dining, Inc.

Debtor is indebted to Fifth Third Bank in the amount of $2,639,141.41 as of the date Debtor filed its bankruptcy petition. *(See*, Fifth Third Bank's Motion for Relief from Stay, Docket No. 18.) Fifth Third's loans to the Debtor are secured by a first mortgage against the three parcels of real estate and an assignment of rents owed by King

Dining, Inc., to the Debtor. Debtor made monthly payments on its debt to Fifth Third Bank until September, 2011. *(See*, Declaration of Nicholas J. Lachapelle, paragraph 4, Docket No. 41.) Debtor's sole source of income is payments from the properties leased by King Dining, Inc.

King Dining, Inc. had twenty year franchise agreements with Burger King. Two of the three franchise agreements between King Dining, Inc., and Burger King expired July 1, 2012. (Transcript p.19, Docket No. 53) King Dining, Inc. is in the process of negotiating new franchise agreements with Burger King.

In September, 2011, King Dining, Inc., stopped making its lease payments to Debtor, causing Debtor to default on its payments to Fifth Third Bank. King Dining, Inc.'s Profit and Loss Statements for September, 2011 through July, 2012, show that King Dining's revenue, that is its stream of income received from the Burger King franchises, was spent primarily on inventory, franchise fees, utilities, and labor. Even without paying any rent to Debtor, King Dining's Profit and Loss Statements show that King Dining, Inc. lost money every month with the exception of July 1 to July 16, 2012. (See, Exhibit 3 to Fifth Third Bank's Response to Debtor's Motion for Reconsideration.)

As a result of Debtor's default on its contractual obligations to Fifth Third Bank, in May, 2012, Fifth Third Bank commenced foreclosure proceedings against all three properties owned by Debtor. On May 21, 2012, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

On June 5, 2012, Fifth Third Bank filed a Motion for Relief from the Automatic Stay so that it could continue with the foreclosure proceedings commenced in state court. On July 9, 2012, Debtor filed a Combined Plan and Disclosure Statement. The

2

12-52639-mbm    Doc 56    Filed 09/05/12    Entered 09/05/12 14:45:09    Page 2 of 7

salient features of the Debtor's proposed Plan are: (1) Debtor proposes to "cram down" Fifth Third's secured claim from $2,639,141.41 to $286,000.00 based on Debtor's valuation of the property[1]; (2) Debtor proposes to pay that claim with a monthly payment of $1,733.10 for 240 months at 4% interest with a balloon payment after 10 years; and (3) Debtor proposes to make monthly Plan payments of $5,361.58. (See, Debtor's Combined Plan and Disclosure Statement, pp. 8 - 10, Docket No. 38.)

On July 18, 2012, the Court held an evidentiary hearing on Fifth Third's Motion for Relief from Stay. At the conclusion of the hearing, the Court issued a bench opinion granting Fifth Third's Motion for Relief from the Stay. (See Docket Nos. 42 and 43). The full transcript of the hearing is at Docket No. 53. On August 2, 2012, Debtor filed a Motion for Reconsideration of the Court's Order granting Fifth Third Bank's Motion for Relief from Stay. Debtor did not appeal the Order Granting the Motion to Lift Stay or seek a stay pending appeal. Following the expiration of the 14 day stay provided for by Fed. R. Bankr. P. 4001(a)(3), Fifth Third Bank completed a foreclosure sale on the properties. Fifth Third was the successful bidder at each of the foreclosure sales.

Local Bankruptcy Rule 9024-1(a)(3) controls motions for reconsideration. That rule states in relevant part:

> Generally, and without restricting the discretion of the court, a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted. The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a

---

[1] Fifth Third Bank disputes this valuation of the property. Fifth Third Bank's appraisal of the three properties valued the properties at $1,950,000 in October, 2011. A higher value would require a significantly larger payment on Fifth Third's secured claim.

different disposition of the case must result from a correction thereof.

In its Motion for Reconsideration, Debtor asserts that subsequent to the evidentiary hearing, Burger King altered the requirements for Burger King franchisees seeking to renew their franchises. At the evidentiary hearing, Raad Asmar, the principal of King Dining, Inc., testified that in order to obtain new franchise agreements with Burger King, Burger King is requiring its franchisees to renovate the Burger King stores. These renovations require significant capital. Mr. Asmar testified that under a program referred to as the "ITP Program", Burger King and an affiliated lending institution would loan approved franchisees the money to renovate their Burger King stores. Once the renovations are complete, after a 90 day grace period, franchisees must start repaying the loans. Mr. Asmar further testified that as of the date of the evidentiary hearing, King Dining, Inc., had not yet been approved for participation in the ITP Program, however, if it is was approved, King Dining, Inc's monthly obligation to repay Burger King and the affiliated lending institution would require a repayment of $8,000.00 per Burger King location or $24,000.00 per month. (See, Transcript, p. 27, Docket No. 53.)

Based on Mr. Asmar's testimony, King Dining, Inc., could not generate sufficient revenue in the foreseeable future to make rent payments to Debtor. The Court found that King Dining, Inc's, three (3) Burger King franchises are generating insufficient revenue to pay rent to Debtor, even without the additional obligation to Burger King. The argument that King Dining, Inc., would in the future be able to pay rent, notwithstanding the additional $24,000.00 a month obligation, was simply not credible.

In its Motion for Reconsideration, Debtor argues that subsequent to the

12-52639-mbm    Doc 56    Filed 09/05/12    Entered 09/05/12 14:45:09    Page 4 of 7

evidentiary hearing Burger King changed its requirements for participation in the ITP Program.  According to Debtor, under this new lending program, the remodeling required by Burger King of its new franchisees would cost King Dining, Inc., approximately $3,000.00 per location, rather than the $8,000.00 originally testified to by Mr. Asmar.  (See, Debtor's Motion for Reconsideration, Docket No.. 48, paragraph 2.) Debtor asserted in its Motion for Reconsideration that after the remodeling, Debtor anticipated increased revenue of over 20% which would cover the cost of repaying the Burger King loan and generate sufficient revenue to pay rent to Debtor.

As Fifth Third Bank points out in its Response to Debtor's Motion for Reconsideration, there are multiple problems with Debtor's assertion that the alleged change in Burger King's policy regarding remodeling is sufficient grounds for this Court to set aside its Order Granting the Motion for Relief from Stay.  The only document provided by Debtor to support its assertion that King Dining, Inc's future obligation to Burger King would be significantly less than the amount testified to at the evidentiary hearing, is a press release from the internet entitled "New and Improved BK Lending Program" and a link to a website titled "NFA Restaurant Finance."  These documents have been supplied to the Court without any foundation as to why they have any relevance to Debtor's case.  As Mr. Asmar testified at the evidentiary hearing, King Dining, Inc., has not yet been approved for participation in the ITP Program and there is no document or affidavit from Burger King indicating the terms by which new franchises would be granted.  There is no connection between the documents provided by Debtor in support of its Motion for Reconsideration and its argument that a possible change in the policy of Burger King regarding prospective franchisees will allow King Dining, Inc.,

to generate sufficient revenue to pay rent to Debtor.  Without rent payments Debtor cannot service its debt to Fifth Third Bank.

Debtor has failed to produce any additional documents or evidence which demonstrate a palpable defect by which the Court and the parties at the evidentiary hearing were misled.  The evidence and the testimony demonstrate that King Dining, Inc., generates insufficient revenue to pay Debtor, which precludes Debtor from paying Fifth Third Bank.  Therefore, the Motion for Reconsideration is denied.

Even if Debtor had produced admissible evidence that Burger King had changed its policy requiring remodeling by prospective franchisees, and that change would reduce the monthly payments made by King Dining Inc., to Burger King, the Court finds no grounds to grant Debtor's Motion for Reconsideration.  Debtor's Motion for Reconsideration projects rental income from King Dining, Inc., to Debtor in the amount of $10,470.00.[2]  This figure is unattainable based on the evidence submitted at the evidentiary hearing.  Specifically, at the evidentiary hearing Debtor introduced Profit and Loss Statements for King Dining, Inc., for September, 2011 through June, 2012.  (See, Fifth Third Bank's Response to Debtor's Motion for Reconsideration Exhibit 3, Docket No. 54.)  As noted above, the Profit and Loss Statements show King Dining, Inc., losing money every month from September, 2011 through June, 2012,  even without paying rent to Debtor.  Assuming that King Dining, Inc., is: (1) able to renew its franchises with Burger King and (2) increase sales by 20 to 30%, King Dining, Inc., will still generate

---

[2]This amount is the amount of monthly revenue necessary for Debtor to pay both its Plan payments and its ongoing monthly expenses.  (See, Motion for Reconsideration, p.7, Docket No. 48.)

insufficient revenue to pay enough rent to Debtor for Debtor to cover its monthly Plan payments. The combination of the increase in the cost of goods sold (as a result of the increase in sales) and the monthly payment to Burger King, to repay Burger King for advancing funds for the renovation, more than offset a potential 30% increase in revenues. Simply stated, the math does not work. (See, Fifth Third Bank's Response to Motion for Reconsideration Exhibit 4, Docket No. 54.) Debtor's Motion for Reconsideration presents no new evidence which refutes the mathematical impossibility of Debtor making its plan payments, even if King Dining, Inc., is able to renew its Burger King franchises.

## Conclusion

Debtor's Motion for Reconsideration has failed to state any palpable defect by which the Court and the parties at the evidentiary hearing have been misled. Therefore, the Motion for Reconsideration is denied.

IT IS SO ORDERED.

Signed on September 05, 2012

/s/ Marci B. McIvor
Marci B. McIvor
United States Bankruptcy Judge